UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY,<br><br>Plaintiff<br><br>V.<br><br>LIBERTY MUTUAL FIRE INSURANCE;<br>ATLAS INDUSTRIAL SERVICES, LLC;<br>ATLAS RESIDENTIAL AND COMMERCIAL SERVICES, LLC;<br>RAY FALKOFF;<br>MICHAEL C. PICARD;<br>AND JOHN DOES 1-10,<br><br>Defendants | Case No. 3:22-cv-1143<br><br><br><br>SEPTEMBER 9, 2022 |

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

1. Plaintiff Utica Mutual Insurance Company ("Utica") is a New York Corporation authorized to engage in the business of insurance in the State of Connecticut.

2. Defendant, Liberty Mutual Fire Insurance ("Liberty Mutual"), is a corporation with a principal place of business in the State of Massachusetts.

3. Defendant, Atlas Industrial Services, LLC ("Atlas Industrial") is a corporation with a principal place of business in the State of Connecticut.

4. Defendant Atlas Residential and Commercial Services, LLC ("Atlas residential") is a corporation with a principal place of business in the State Connecticut.

5. Defendant, Ray Falkoff, is a natural person who, based upon knowledge and belief, resides in Connecticut and is the Chief Financial Officer of the Atlas Companies.

6. Defendant, Michael C. Picard, is a natural person who, based upon knowledge and belief, resides in Connecticut and is manager / member of Atlas Industrial.

7. John Does 1-10, whose identities are presently unknown, were/are employees, representative, officers and/or owners of Atlas Residential and/or Atlas Industrial who, along with Defendants Falkoff and Picard, committed one or more intentional torts alleged herein.

## VENUE, JURISDICTION AND APPLICABLE LAW

8. This Court has jurisdiction over the subject matter and the parties in accordance with 28 U.S.C. §2201 and 28 U.S.C. §1332, in that there is diversity of citizenship and the matter in dispute, exclusive of interest and costs, has a value in excess of Seventy-Five Thousand ($75,000.00) Dollars.

9. Venue in this district is proper under 28 U.S.C. §1391(b)(1) because, under 28 U.S.C. §1391(b)(1), a civil action may be brought in a judicial district in which any defendant resides, and Atlas Industrial and Atlas Residential are residents of the State of Connecticut.

10. Venue in this district is also proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the District of Connecticut, namely (i) the issuance of a policy of insurance to the defendant, Atlas Residential, by Utica and (ii) the work-related accident at issue in this case occurred in the District of Connecticut.

## **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

### **Department of Administrative Services Contract**

11. On October 25, 2018, the State of Connecticut Department of Administrative Services Procurement Division ("DAS") issued a Contract Award (the "Contract Award") for "Complete-In-Place Installation and Removal of Guide Rail and Impact Attenuation Systems" (the Project").

12. The contractors listed on the above-mentioned Contract Award were Atlas Industrial and Total Fence LLC ("Total Fence").

13. Per the Contract Award, Atlas Industrial was required to seek permission in writing from the State of Connecticut to change any contractors / employees / workers on the Project but, per the DAS, Atlas Industrial requested no such changes.

14. On or about October 25, 2018, on behalf of Atlas Industrial, Raymond Falkoff signed a contract (the "Contract") with DAS for the work contemplated in the October 25, 2018 Contract Award.

15. The signature page of the Contract indicates that Raymond Falkoff was the CFO of Atlas Industrial, as of October 25, 2018.

16. On or about October 30, 2018, Melody A. Currey, Commissioner of the State of Connecticut Department of Administrative Services, signed the Contract.

17. The scope of work contemplated by the Contract was "[c]omplete in-place installation and removal (if specified) of metal beam guide rail, including transitional guide rail at fixed objects and/or bridge parapets, box beam, Merritt Parkway guide rail, 3-cable guide rail and of impact attenuation systems at various locations within the State of [Connecticut] for Client Agency."

18. Section 37 of the Contract provided that before commencing performance of any work pursuant to the Contract, Atlas Industrial was to obtain and maintain workers' compensation and employers' liability coverage, among other types of coverage, at its own cost and expense for the duration of the Contract.

**The Liberty Mutual Policy**

19. On or about March 21, 2019, an Insurance Certificate was issued to DAS on behalf of Atlas Industrial.

20. This Insurance Certificate lists the insured as Atlas Industrial.

21. This Insurance Certificate states that Atlas Industrial had coverage for workers' compensation and general liability with Liberty Mutual, under policy number XWA58410209 (the "Liberty Policy"), effective March 23, 2019 through March 23, 2020.

22. The Connecticut Department of Labor's Payroll Certification (the "Certification") for the Project for the week of September 8, 2019 through September 14, 2019, including on the date of the Accident, identifies the subcontractor as Atlas Industrial.

23. Such certifications were required to be completed weekly and each such certification submitted by Atlas Industrial regarding the Project affirmed that the insurance certificate submitted therewith, which disclosed Liberty Mutual as the workers' compensation and liability insurer, was correct.

24. The Certification lists Dillon Peterson (the "Claimant" or "Mr. Peterson"), as a worker for Atlas Industrial for the week of September 8, 2019 through September 14, 2019, including on the date of the September 11, 2019 Accident.

25. Payroll certifications submitted by Atlas Industrial for several weeks prior to the Accident also included Mr. Peterson as a worker on the Project for Atlas Industrial.

26. On September 24, 2019, Defendant Picard of Atlas Industrial certified that the payroll records submitted relative to the week ending September 14, 2019 were true and accurate in a Certified Statement of Compliance ("Statement").

27. In this Statement, Defendant Picard attested to the fact that Atlas Industrial was Mr. Dillon's employer on this project.

28. In this Statement, Defendant Picard attested to the fact that "[e]ach such person of the Employer is covered by a workers' compensation insurance policy for the duration of his employment which proof of coverage has been provided to the contracting agency."

29. Per the Contract, all workers on the Project were required to be a member of a labor union.

30. At all relevant times, Atlas Residential did not employ unionized workers and, therefore, it was not permitted to work on the Project.

31. At all relevant times, Atlas Industrial employed unionized workers and was a contractor of record on the Project (along with Total Fence).

## The Utica Policy

32. At all relevant times, Atlas Residential had a Policy of workers' compensation insurance with Utica (the "Utica Policy").

33. The terms of the Policy state that Utica was to provide workers' compensation coverage for the following categories of employees and work: clerical office employees; salespersons or collectors – outside; construction or erection permanent yard; fence erection – metal; wire goods manufacturing; and fence manufacturing – wood and picket.

34. The Policy does not cover any type of work related to the manufacture and/or installation of guardrails.

35. Atlas Residential procured the Policy with Utica through Ciardello Insurance Agency ("Ciardello").

36. In a January 12, 2016, e-mail from Jill Grabowski, an insurance agent at Ciardello, Ms. Grabowski confirmed that the Policy does not cover any type of guardrail work.

37. In the January 12, 2016, e-mail, Ms. Grabowski also noted that another Atlas entity had been established to perform guardrail installation work and that this Atlas entity had a separate worker's compensation insurance policy through a different carrier.

### Underlying Workers' Compensation Claim

38. On September 13, 2019, Defendant Falkoff completed a First Report of Injury (the "First Report") concerning an alleged injury sustained by Mr. Peterson on September 11, 2019 (the "Accident").

39. This First Report of Injury states that Mr. Peterson's employer at the time of the accident was Atlas Residential.

40. That representation by Defendant Falkoff is directly contrary to Certification completed by Defendant Picard, which expressly identifies Atlas Industrial as Mr. Peterson's employer for the week of September 8, 2019 through September 14, 2019, including on the date of the Accident.

41. The Certification states that Atlas Industrial had workers' compensation insurance through the Liberty Policy.

42. Through counsel, on December 16, 2019, Claimant filed a Form 30C Notice of Claim for Compensation Benefits related to his alleged September 11, 2019 injury.

43. The named employers listed on the Form 30C filed on behalf of Claimant in connection with the Accident correctly includes Atlas Industrial.

44. The named employers listed on the Form 30C filed on behalf of Claimant in connection with the Accident incorrectly includes Atlas Residential.

45. Relying on the misrepresentations of Atlas Residential, Utica opened a claim (the "Claim") and paid both medical and wage replacement benefits related to the Accident to and on behalf of the Claimant.

46. Atlas Residential had no involvement with the Project or Contract and did not employ the Claimant on the date of the Accident.

47. At the time of Claimant's Accident, he was an employee of Atlas Industrial, and therefore, covered under the Liberty Policy.

48. Liberty Mutual has acknowledged to Utica that the First Report of Injury should have been completed by or on behalf of Atlas Industrial and sent to Liberty Mutual rather than to Utica.

49. Atlas Industrial and/or Atlas Residential has / have refused to allow Liberty Mutual to tender a Jurisdictional Voluntary Agreement ("JVA") accepting all liability in connection with the Claim and Accident until after October of 2022 in order to have a more favorable Modification Factor ("MOD").

50. MODs are used by workers compensation insurers to adjust premiums based on multipliers reflecting an insured's actual loss experience.

51. If Atlas Industrial were to allow Liberty Mutual to tender the JVA prior to October of 2022, Atlas' Industrial's premiums would rise consistent with its actual loss experience.

**COUNT ONE: DECLARATORY JUDGMENT (AS TO ALL DEFENDANTS)**

52. The allegations set forth in Paragraphs 1 through 51 are incorporated by reference and realleged as if fully set forth herein.

53. Based upon the facts discussed above, the Claimant was, at all times relevant to the Claim and the Accident, an employee of Atlas International.

54. Atlas Industrial did not have workers' compensation insurance coverage through Utica at any time relevant to this case.

55. The Plaintiff, Utica, owes no duty to Atlas Industrial in connection with the Claim or the Accident.

56. At all times relevant to this case, Atlas Industrial had workers' compensation insurance coverage through Defendant, Liberty Mutual.

57. This is a proper case for judicial determination of the rights, responsibilities, and liabilities of the parties such that the Plaintiff, Utica, may be afforded relief from any uncertainty or insecurity with respect to any claim or contention that the Utica Policy requires Utica to provide coverage to both Atlas Industrial and Atlas Residential with regard to the Claim and Accident.

58. Utica is entitled to a judgment declaring that, at the time of the Accident, Claimant was covered by the Liberty Policy, and that Utica has no responsibility or obligation under the Utica Policy.

## COUNT TWO: DECLARATORY JUDGMENT (AS TO LIBERTY MUTUAL)

59.     The allegations set forth in Paragraphs 1 through 58 are incorporated by reference and realleged as if fully set forth herein.

60.     Utica has paid both wage replacement and medical benefits related to the Claim and Accident.

61.     Utica has also incurred legal and other expenses associated with the Claim and Accident.

62.     All such payments were and are the responsibility of Liberty Mutual.

63.     Utica is entitled to a judgment requiring Liberty Mutual to reimburse Utica for all payments it issued pursuant to the Claim and the Accident.

## COUNT THREE: FRAUD AND CIVIL CONSPIRACY
## (AS TO FALKOFF, PICARD AND JOHN DOES 1-10)

64.     The allegations set forth in Paragraphs 1 through 63 are incorporated by reference and realleged as if fully set forth herein.

65.     Atlas Residential, through Falkoff, Picard and John Does 1-10 intentionally misrepresented in the First Report that the Claimant was injured on September 11, 2019 while working for Atlas Residential.

66.     Falkoff and John Does 1-10 knew, at the time that they completed the First Report, that Mr. Peterson was injured while working on a highway guardrail replacement project.

67.     Falkoff and John Does 1-10 knew, at the time that they completed the First Report, that Atlas Residential was not a contractor in connection with the Project.

68. Falkoff and John Does 1-10 knew, at the time that they completed the First Report, Atlas Industrial was the only Atlas entity listed in the Contract for the Project.

69. Falkoff and John Does 1-10 knew, at the time that they completed the First Report, that they were providing false information to Utica.

70. Falkoff and John Does 1-10, at the time that they completed the First Report, intended for Utica to rely upon the knowingly false statements.

71. Utica relied upon the knowingly false statements made by Falkoff and John Does 1-10.

72. Utica relied upon those knowingly false statements and, in the process, expended sums of money for Claimant's medical treatment that it was never obligated to pay.

73. Utica relied upon those knowingly false statements and, in the process, expended sums of money for Claimant's wage replacement benefits that it was never obligated to pay.

74. Utica relied upon those knowingly false statements and, in the process, expended sums of money related to time Mr. Peterson missed from work that it was never obligated to pay.

75. Utica relied upon those knowingly false statements and, in the process, may be required to expend further sums of money that it is not obligated to pay.

76. In short, Utica relied to its detriment on the knowingly false statements made by Falkoff and John Does 1-10.

77. At some point, either prior to or after Falkoff and John Does 1-10 committed fraud, Picard joined the conspiracy to defraud Utica.

78. Falkoff, Picard and John Does 1-10 (the "Co-conspirators") agreed together to commit the stated fraud on Utica for personal financial gain.

79. Insurers such as Utica and Liberty Mutual apply MODS to determine premiums for workers' compensation insurance.

80. MODs are the factors by which workers' compensation premiums are multiplied to reflect an insured's actual loss experience.

81. The Co-conspirators refuse to allow Liberty Mutual, the rightful workers' compensation carrier, to take over the Claim until Atlas Industrial's MODs are more favorable.

82. Their agreement to defraud Utica is wholly inconsistent and incompatible with Connecticut insurance laws and regulations.

83. As such the fraudulent and conspiratorial conduct engaged in by the Co-conspirators has been ongoing since September 11, 2019.

## PRAYERS FOR RELIEF

WHEREFORE, Utica Mutual Insurance Company prays for the following relief:

A. A declaratory judgment that at the time of the Accident, the Claimant was covered by the Liberty Policy, and that Utica has no responsibility or obligation under the Utica Policy;

B. A declaratory judgment that Liberty Mutual is required to reimburse Utica for all payments it issued pursuant to the Claim and the Accident;

C. A declaratory judgment that Falkoff, Picard, and John Does 1-10 agreed together to commit fraud and that such fraudulent and conspiratorial conduct has been ongoing since September 11, 2019, as set forth in the Third Cause of Action;

D. For general and compensatory damages in an amount to be determined at trial in connection to the Third Cause of Action;

E. For exemplary and punitive damages in an amount to be determined at trial for the Third Cause of Action;

F. That all allowable costs be taxed to the defendants in this action, including reasonable attorneys' fees; and

G. For such other, further, or different relief as the Court deems proper.

THE PLAINTIFF,
UTICA MUTUAL INSURANCE COMPANY

By: /s/ Rachel J. Fain
HALLORAN & SAGE LLP
225 Asylum Street
Hartford, CT 06103
Fed. Bar. #ct29620

Phone: (860) 522-6103  
Fax: (860) 548-0006  
fain@halloransage.com  
Its Attorneys